JOSEPH H. ALLEN, JR., T/A SMITHFIELD AUTO SALES AND SMITHFIELD AUTO AND MOBILE HOME SALES, INC. v. AMERICAN SECURITY INSURANCE COMPANY, PETE COCHRAN, FAIR BLUFF MOTORS, INC., ADVANCED MOTORS, INC., AUTO SALES, INC., AND PLEASURE ROUTE MOTORS, INC.

No. 8011SC1098

(Filed 21 July 1981)

**Automobiles § 6.5— wrecked vehicle—constructive total loss—no salvage vehicle—no fraud**

   An automobile purchased by plaintiff, who thought that it had never been wrecked when in fact it had suffered substantial damage in a collision, was not a "salvage vehicle" within the meaning of G.S. 20-109.1(a)(1), since defendant insurance company neither acquired title to nor obtained possession of the vehicle, nor did the company pay a total loss claim, but instead paid a "constructive total loss," that is, the value of the automobile before the collision less its salvage value and less $50 deductible under the terms of its policy. Therefore, defendant insurance company was not required to surrender evidence of title to the vehicle to the State so that the reissued certificate of title might reflect that the vehicle had been previously wrecked, and the trial court properly entered summary judgment for defendant insurance company, defendant appraiser who pronounced the vehicle a "constructive total loss," and defendant original owner of the vehicle.

APPEAL by plaintiff from *Brannon, Judge.* Judgments entered in open court 2 September 1980. Heard in the Court of Appeals 6 May 1981.

Taken in the light most favorable to plaintiff, the affidavits and answers to interrogatories would tend to establish the following facts if presented as evidence at trial: Prior to 26 January 1978, defendant Fair Bluff Motors, Inc., obtained possession of the

1978 Ford Thunderbird automobile, which is the subject matter of this lawsuit, along with a certificate of origin as evidence of Fair Bluff's ownership. The automobile was operated by the company as a demonstrator. On 26 January 1978 the automobile was involved in a collision. Fair Bluff Motors, Inc. subsequently filed a claim with its insurance carrier, defendant American Security Insurance Company. Pursuant to this claim, defendant American Security's local agent, the Carolina Agency, employed defendant George A. "Pete" Cochran trading as Cochran Appraisals to appraise the damage to the automobile in question arising out of the 26 January collision. Defendant Cochran appraised the automobile at a value, before the accident, of $6,300.00. He pronounced the vehicle a "constructive total loss." He estimated the salvage value of the automobile at $1,750.00 to $2,000.00. Based on defendant Cochran's appraisals, defendant American Security paid to defendant Fair Bluff Motors the sum of $4,450.00 representing the wholesale price of $6,300.00, less $1,800.00 as salvage value and less $50 deductible under the terms of the policy. Defendant Fair Bluff thereupon sold the automobile to Alton Fairfax, a buyer procured by Cochran. Fairfax apparently sold the automobile to defendant Advanced Motors, Inc., which in turn sold it to defendant Auto Sales, Inc. Auto Sales apparently sold the automobile to defendant Pleasure Route Motors, Inc., which sold it to plaintiff for $5,995.00 without disclosing to plaintiff that the automobile had been heavily damaged in a collision and subsequently repaired. Neither Pete Cochran nor American Security Insurance Company ever took title or possession of the automobile. Neither Cochran, American Security, nor Fair Bluff Motors, Inc., ever dealt in any way with plaintiff, nor made any representations as to the quality or fair market value of the automobile to plaintiff.

Plaintiff's complaint alleges that all of the defendants knew that the automobile was a heavily damaged vehicle not capable of being repaired to a good and merchantable condition and in fact was a total loss under G.S. 20-109.1, but nonetheless participated in the attempted repair of the vehicle; that several latent defects remained after the repairs; and that the incomplete repairs were made for the sole purpose of defrauding the ultimate purchaser of the vehicle. Plaintiff seeks $6,500.00 actual damages and $50,000.00 punitive damages.

Defendants Fair Bluff Motors, Inc., George A. "Pete" Cochran, and American Security Insurance Company moved for summary judgment. Plaintiff appeals from the granting of said motions.

*L. Austin Stevens for plaintiff appellants.*

*Boyce, Mitchell, Burns & Smith by Lacy M. Presnell, III for American Security Insurance Company and Pete Cochran, defendant appellees.*

*Johnson, Patterson, Dilthey & Clay by Robert W. Sumner for defendant appellee, Fair Bluff Motors, Inc.*

CLARK, Judge.

Plaintiff bases the single question presented on this appeal upon defendants' alleged circumvention of G.S. 20-109.1. That statute applies only to "salvage vehicles." The statute itself defines a wrecked automobile as a salvage vehicle whenever "an insurance company as a result of having paid a total loss claim acquires title to a vehicle, and obtains possession or control of a vehicle, for any cause other than theft . . . ." G.S. 20-109.1 (a)(1).

The automobile herein does not fit the statutory definition of salvage vehicle for two reasons. First, the insurance company neither acquired title nor obtained possession of the vehicle. Second, the company did not pay a total loss claim. The materials offered by defendants and uncontradicted by plaintiff, were that the automobile was a "constructive total loss." The value of the automobile before the collision was at least $6,300.00 and Fair Bluff's coverage was $50.00 deductible, yet the insurance company paid only $4,450.00 on the claim; not $6,250.00. It appears that American Security should have paid $6,250.00 (the value of the automobile, less the $50.00 deductible) had it paid a total loss claim. By not doing so, it clearly was not entitled to title or possession of the automobile. It would be inequitable to force Fair Bluff to sell its $6,300.00 automobile to its insurance company for $4,450.00; this surely was not the intent of the statute.

The term "constructive total loss" was explained in defendant American Security's answers to interrogatories and again in oral argument. It appears to be a term of art employed by insurance companies in describing wrecked vehicles in which the

cost of repairing the vehicle (including, where applicable, the cost of repairing latent defects as yet undiscovered but reasonably anticipated) added to the salvage value of the automobile exceeds the actual cash value of the vehicle prior to the collision. Simply stated, the vehicle is considered a constructive total loss any time repair becomes economically impractical. Under this definition a constructive total loss is something quite different from an actual total loss which is generally defined as occurring when cost of repairs exceeds the fair market value of the vehicle prior to the collision. See 7A Am. Jur. 2d, Automobile Insurance § 418, p. 49 (1980). It appears to us that the total loss referred to in G.S. 20-109.1 must be an actual total loss, since only if the insurance company pays the full pre-collision value of a vehicle can the vehicle's owner be expected to give up his rights in the vehicle, including his right to the proceeds from salvage of the vehicle. We think it unlikely that the legislature intended to force the owner of a wrecked vehicle to give up title and possession of his vehicle for less than its reasonable pre-collision value. We hold that G.S. 20-109.1 applies only to the payment of an actual total loss claim, and thus is inapplicable to the case sub judice where a substantially lower constructive total loss claim was paid.

Plaintiff argues that the purpose of the statute is to protect consumers from those who would repair wrecked vehicles and then sell them at the higher price of an unwrecked vehicle without disclosing to the buyer that the vehicle had ever been wrecked. Although this is a commendable goal, if such were the intent of the legislature in enacting G.S. 20-109.1, we can find no hint of such a broad purpose anywhere in the statute, either from its language or by implication. The statute appears to be directed only toward insurance companies who obtain salvage vehicles as a result of paying a total loss claim, repair them, and then sell them. The intent of the statute is to see that such insurance companies surrender their evidence of title to the State, so that the reissued certificate of title might reflect that the vehicle has been previously wrecked. The legislature may wish to consider legislation to insure that all owners of wrecked vehicles surrender their title certificates to the State for notification thereon of the amount of the claim paid as a result of the collision (since the consumer who buys a previously wrecked vehicle for the price of an unwrecked one doubtless does not care whether it was an in-

surance company, an automobile dealership, or an individual who bilked him); but until such time as this occurs, defendant Fair Bluff had no obligation to surrender its evidence of title to the State since it was not an insurance company, and defendant American Security had no obligation to surrender evidence of title to the State since it never received any and since it never paid a total loss claim within the meaning of G.S. 20-109.1.

In this case the uncontradicted facts appear to be that none of the defendants; neither the insurance company, nor the adjuster, nor the former owner; either knew that the vehicle would be repaired, or that it would be resold, or what price the seller would ask, or that the seller would fail to disclose the vehicle's previously wrecked condition. Under such circumstances plaintiff had no grounds for a suit against any of these three defendants unless he could convince us to read G.S. 20-109.1 so broadly as to include the insurance company in this case. He presumably hoped to then prove complicity on the parts of the other two defendants. The statute, however, cannot be so broadened as reasonably to include the facts of this case. The entry of summary judgment was proper.

Affirmed.

Judges MARTIN (Robert M.) and HILL concur.